McCAULEY, *et al. vs.* GRIMES AND WIFE.—*June*, 1830.

M purchased a tract of land, which at his request was conveyed to his son C. At this time C was a minor, and did not attain his majority until after his father's death. M bequeathed pecuniary legacies to his son H, and other children, except C. After M's death the children entered into a parol agreement to divide equally the real and personal estate of their father, and in pursuance thereof, C conveyed this land to H then a married man, in fee, who gave bonds to the children for, and executed a mortgage of the land to them, to secure the payment of, their several shares of their father's estate. The deed, mortgage and bond were all executed at the same time. Upon H's death it being ascertained that the land was insufficient to pay the mortgagees, if subject to a claim of dower in favor of H's widow, HELD, That she was not entitled to dower.

There is no general rule, in strictness, that in cases of instantaneous seisin the widow shall, or shall not, be entitled to dower. This must depend as well upon the character of the seisin, as its duration.

Where a man has the seisin of an estate, though for an instant, beneficially for his own use, his widow shall be endowed.

Where the husband is the mere instrument for passing the estate, although there may be an instantaneous seisin, the widow shall not be endowed.

Where one is seised for the combined use of himself and others, and his interest, real or contingent, is not susceptible of any particular ascertainment, but is necessarily undefined, and is to be postponed until the gratification of all the uses to which his seisin is subservient, it is not a case of beneficial seisin for his own use, so as to endow his wife to the prejudice of the other uses.

APPEAL from *Washington* County Court.

This was an action of *Dower*, commenced on the 2d of November, 1825, by *James Grimes*, and *Catharine* his wife, (the appellees) against the appellants, *John McCauley* and others, for one-third part of a tract of land called " *Conococheague Manor*," and of a tract called " *Number*

*Five*," one of the reserves of said manor, situate in *Washington* County. There was a judgment, by confession, for the demandants, subject to the opinion of the County Court, on the following statement of facts :

"It is admitted that *Charles McCauley*, deceased, purchased in his life time, the land in the declaration mentioned, from a certain *Frisby Tilghman*, who, at his request, conveyed the same to his son, *Charles McCauley, jr.* in fee simple, by deed dated August the 20th, 1808, in consideration of the sum of £ 4495 10 shillings. That at the time of the execution of said conveyance, *Charles McCauley, jr.* the grantee, was a minor, and did not attain his majority until after the death of his father. That *Charles McCauley* the elder, deceased, bequeathed to his son *Hugh*, a legacy of £1000, and to each of his other children, except his son *Charles*, the sum of £500. That after the death of the elder *Charles McCauley*, and the arrival at age of his son *Charles McCauley, jr.* he, together with his brothers and sisters, entered into a parol agreement that they would divide and share equally, the real and personal estate of their father, without regard to the superior value of the property given to *Charles* over the rest, by the deed from *Tilghman* before mentioned. The precise terms of the agreement, however, were not known, until all the parties met at the office of counsel, on, or shortly before the 8th of February, 1822, when the counsel was informed of the agreement which had been entered into, and he was requested to have a deed prepared from *Charles McCauley, jr.* to *Hugh McCauley*, for the land in the declaration mentioned, for the purpose of carrying the said agreement into effect; which was, that *Charles* should convey by deed of bargain and sale to his brother *Hugh*, the land which had been conveyed to him, *Charles*, by the aforesaid *Frisby Tilghman ;* and that *Hugh*, in consideration thereof, should pay to his brothers and sisters, certain stipulated sums of money ; and to secure the payment of the same, he should at the same time that he received the deed from *Charles*, execute a mortgage to

them of the same lands, together with his bonds for the payment of the several sums of money, which it was agreed each should have as their respective portions of their father's estate. That in pursuance of said agreement, the deed and mortgage, (in which the deed is recited) and bonds were all executed, at the same time, on the 8th of February, 1822, by the said *Charles* and *Hugh McCauley.* The marriage of the demandant *Catharine,* to *Hugh McCauley,* the grantee in the deed from *Charles,* prior to its execution, and prior to the execution of the mortgage, and the death of *Hugh* subsequently, were also admitted. It was further admitted, that the said *Hugh McCauley* made certain payments on account of the said bonds and mortgage, during his life, amounting to about $2500, and that about the same amount has been paid since, on the same account, by his personal representative. That in the division of the father's estate, the proportion of the said *Hugh* in the land was taken into the estimation, and the aforesaid mortgage and bonds to his brothers and sisters were executed for the balance. That said *Hugh* made valuable improvements on said land, and that it will not sell for more than the balance due the mortgagees, especially if encumbered with the widow's dower. It was further admitted, that *James Grimes,* one of the appellees, intermarried with *Catharine,* the other appellee, prior to the institution of this suit. If upon the preceeding statement, the County Court should be of opinion, that the seisin of the said *Hugh McCauley* was such as to entitle his widow to dower of the said lands, then judgment to be entered for the demandants; otherwise for the defendants, either party reserving the right to appeal, or sue out a writ of error. The County Court gave judgment for the demandants, and the defendants appealed to this Court.

This cause came on to be argued before Buchanan, Ch. J., Earle, Martin, Stephen, and Archer, J.

*Yost*, for the appellants.

The seisin of *Hugh McCauley* was instantaneous, and does not entitle the widow to dower. 2 *Black. Com.* 124. 1 *Thos. Coke, Lit.* 124, note (G.) The seisin in this case, was not beneficial to the grantee, he was merely a trustee for the use of others. The deed and mortgage having been executed at the same time, and in pursuance of a previous agreement, are to be considered as one and the same instrument. *Powel on Contracts,* 410. 2 *Blk. Com.* 331. *Peterson vs. Clarke,* 15 *Johns. Rep.* 205. *Roe. on demise of Noden vs. Griffits, et al.* 4 *Burr. Rep.* 1962. *Vaughan vs. Atkins,* 5 *Burr.* 2787. *Jackson vs. Dunsbagh,* 1 *Johns. Cases,* 95. 4 *Massa. Rep.* 556. *Stow vs. Tift,* 15 *Johns. Rep.* 463. *Clark vs. Munroe,* 14 *Massa. Rep.* 351. 1 *New. Hamp. Rep.* 75. *Bingham on Infancy,* 11. If *Hugh* upon getting the deed from *Charles,* had refused to execute the mortgage in accordance with the previous agreement, a Court of Equity would have compelled him, and parol evidence would have been let in, to show what that agreement was. The action of the Court would have rested on the ground of fraud, but the fraud could only be detected, by resorting to parol proof. It does not appear whether, in point of fact, the execution of the deed preceded or followed the execution of the mortgage, nor does its validity depend upon its previous execution, for a mortgage with a warranty would convey the after acquired title. *Jackson vs. Matsdorf,* 11 *Johns. Rep.* 97. 108. *M'Cracken vs. Wright,* 14 *Ib.* 194. Looking at the case stated, no time could have intervened between the execution of these instruments, as they are stated to have been executed at the same time. But if the deed is to be taken, as having been first executed, the grantee took subject to the agreement, and the equities growing out of it. It was subject to a charge when it passed

McCauley *et al. vs.* Grimes and Wife.—1830.

to him, and his widow, therefore, cannot have dower. Where several instruments are executed at the same time, between the same parties, in relation to the same subject matter, they are considered as one. *Holbrook vs. Finney,* 4 *Massa. Rep.* 569. *Stow vs. Tifft,* 15 *Johns. Rep.* 459. *Jackson vs. Dewitt,* 6 *Cowen.* 316. There could have been no substantial and beneficial seisin in *Hugh Mc-Cauley;* he was a mere trustee for the use of the mortgagees.

*Price,* for the appellees.

The principle contended for on the other side, that an instantaneous seisin does not entitle the wife to dower, is not a sound one. The general rule is the reverse, and the cases cited by the counsel for the appellants are exceptions. 2 *Bac. Ab.* 371, *and note.* 1 *Thos. Coke,* 576, (*London Ed.*) *Bingham on Coverture,* 313, 314. 2 *Black. Com.* 124. The instantaneous seisin which does not confer the right of dower, is that which the party holds for the benefit of another. If he has seisin for his own use, though but for a moment, the wife has dower. When the vendor conveys to the vendee the title is gone, because what is conveyed cannot be retained; if it could, why take a mortgage? In this case the mortgage recites the deed as one already executed, and being an absolute deed, the title vested in the grantee, and there remained until the mortgage was executed. If the mortgagees here have any title, they derive it from *Hugh McCauley.* If he had none, they have none. *Bingham on Coverture,* 314. *Coke Lit.* 576, (*note.*) It is admitted that if a contract consists of several parts, you must take them altogether, because you cannot without doing so ascertain the intention of the parties. But still the question of the operation of the contract remains to be decided. *Pow. on Contracts,* 410. The deed to *Hugh Mc-Cauley* vested in him a fee simple estate, and entitled his wife to dower, and the agreement in virtue of which it was made, and the mortgage executed by him, to neither of

which she was a party, cannot deprive her of that right. As exemplifying the kind of instantaneous seisin which gives the right of dower, he cited 2 *Bac. Abr.* 371. *Clark vs. Munroe,* 14 *Massa. Rep.* 351, and the opinion of *Thompson, Ch. J., in Stow vs. Tifft,* 15 *Johns. Rep.* 464. *Nash vs. Preston, Cro. Ch.* 191. By the act of 1825, a preference is given to a mortgagee over previous judgment creditor, but this would not have been necessary if the mortgagor is considered as acquiring no title by the deed to him from the mortgagee. The mortgagor is the substantial owner of the land. By paying the debt, his title is made absolute. *Ford vs. Philpot,* 5 *Harr. and Johns.* 315. Suppose *Hugh McCauley* had paid the mortgage debt, his title, like the title of all other mortgagors, would have become unfettered.

ARCHER, J. delivered the opinion of the Court.

The record presents in effect the same principle for adjudication, which has heretofore come before the Courts in several States of the Union. In *Holbrook vs. Finney,* 4 *Massa. Rep.* 566, it was decided that a conveyance in fee, and a conveyance by the grantee to the grantor by way of mortgage being considered as parts of the same transaction, did not give to the grantee such a seisin as entitled his wife to have dower in the granted premises. And in *Clarke vs. Munroe,* 14 *Mass.* 352, where the mortgage was made to a third person, at the same time with the deed to the mortgagor, the same determination was had; in each of those cases the deeds were executed in pursuance of a previous agreement between the parties. In *South Carolina,* the same doctrine had prevailed before, as will be seen by a reference to *Bogie vs. Rutledge,* 1 *Bay,* 312; this decision has been recognised, and approved in that State in a very recent decision. *Trustees* of *Frazier vs. Centre and Hall,* 1 *M'Cord,* 279; these determinations have been followed in *New York.* In *Stow vs. Tifft,* 15 *Johns.* 458, the case in 4 *Mass.* 566, was cited and approved, and a judgment

given in conformity with it; in the latter case, however, no agreement was proved, further than could be inferred from the execution of the conveyance and mortgage, and the internal evidence they furnished. In *Pennsylvania*, too, the same doctrine prevails—in *Reed vs. Morrison,* 12 *Sergeant and Rawle,* 70, it was adjudged that as against the mortgagee for the purchase money, the widow had no such seisin as would entitle her to dower. So far as we have examined the *American* cases, the decisions appear to be uniform against the widow's right to dower, unless subject to the payment of the purchase money secured by mortgage—and Chancellor *Kent,* in his recent treatise on the law of real property, approves these determinations. 4 *Kent's Com.* 38, 39. The cases in *Massachusetts* and *New York,* proceed on the doctrine of instantaneous seisin. The deed and mortgage were looked upon as constituting but one contract, bearing the same date, and delivered at the same time; and that as no interval of time intervened, between the taking and rendering back the fee, the case might be assimilated to the conusee of a fine, whose wife would not be entitled to dower, because by the same fine the estate is rendered back to the conusor; it was there considered as merely *in transitu,* and not resting for an instant; the grant and render being one entire act. But perhaps there is no general rule in strictness, that in cases of *instantaneous* seisin the widow shall or shall not be entitled to dower; this must depend as well upon the character of the seisin, as its duration; when a man has the seisin of an estate, though for an instant, *beneficially for his own use,* his widow shall be endowed; where the husband is the mere instrument for passing the estate, although there may be an instantaneous seisin, the widow shall not be endowed. 1 *Thomas Coke,* 665, 666, note G. *Preston Est.* 546. 2 *Bac. Abr.* 371; here the husband was the mere instrument to carry into effect the purposes of the grantor—he takes the fee, that he may instantaneously pass it out of him to certain mortgagees who are the objects of the grantor's bounty,

and whom he designates as the persons to receive the pur-
chase money; and it is not a portion of the lands by metes
and bounds, or any undivided part of it, that he is thus the
instrument for passing away, but it is the fee in the whole
land; and it is done *ex uno flatu.* But it is supposed that he
was *beneficially seised for his own use ;* the situation in
which the grantee stood could not, we apprehend, bring
him within the operation of this general rule; he was
seized beneficially for the use of his brothers and sisters,
and whether his interest was ultimately to be beneficial, was
entirely contingent, and dependent upon the capacities of
the estate to meet the claims of his brothers and sisters.
This we apprehend is not the kind of beneficial interest,
the seisin of which, to his own use, would entitle the wife
to dower—he was not in fact within the words or spirit of
the rule, for he was not seized beneficially for his *own* use,
but for the *combined use of himself and others,* and his
interest, real or contingent, was not susceptible of any par-
ticular ascertainment, but was necessarily undefined, and
was to be postponed until the gratifications of all the uses
to which the lands were made subservient.

It is remarked by *Kent,* 4 *Com.* 38, 39, "That a
transitory seisin for an instant, when the same act that
gives the estate to the husband conveys it out of him,
as in the case of the conusee of a fine, is not sufficient
to give the wife dower; the same doctrine applies when
the husband takes a conveyance in fee, and at the
same time mortgages the land back to the grantor, or to a
third person to secure the purchase money, in whole, *or in
part ;* dower cannot be claimed as against rights under that
mortgage—the husband is not deemed *sufficiently* or *bene-
ficially* seized by such an instantaneous passage of the fee,
in and out of him, to entitle his wife to dower as against
the mortgagee, and (he further remarks) this conclusion is
agreeable to the manifest justice of the case."

There is no case in the *English* books which militates
against these doctrines, unless it should be the case of

*Nash vs. Preston, Cro. Ch.* 191; but if the interpretation given to it by the Courts in *Massachusetts* and *New York,* that the re-demise was not made at the time of the deed of bargain and sale, be found to be correct, it will not interfere with the *American* cases. The justices to whom in that case the question of dower was referred, say it "*was intended they should have it re-demised immediately.*" It is fair to infer from this declaration, that the re-demise was not executed at the same time with the deed of bargain and sale, and if it was not, it does not at all conflict with the *American* cases.

JUDGMENT REVERSED.