**In the Matter of The GOSMAN BEVER-AGE COMPANY, a Maryland Corporation, Bankrupt.**

**No. 10350.**

United States District Court
D. Maryland.
July 7, 1958.

Raphael Walter and M. Peter Moser, Baltimore, Md., for Suburban Club Carbonated Beverage Co.

Louis J. Sagner, Baltimore, Md., for Harrison M. Robertson, Jr., trustee.

THOMSEN, Chief Judge.

The petition of Suburban Club Carbonated Beverage Co. seeks review of a decision of the referee herein denying Suburban's petition to be reimbursed out of the bankrupt estate of the Gosman Beverage Co. for $726.32 paid by

Suburban to the City of Baltimore for overdue water rent on the property No. 800 Debelius Avenue, in which Gosman had owned a leasehold interest. On July 5, 1956, prior to the institution of the bankruptcy proceedings, a State Court receiver for Gosman, with the approval of the State Court, had accepted Suburban's offer to purchase for $20,000 certain assets of Gosman, including an assignment of a lease of the Debelius Avenue property. The receiver executed a bill of sale which embodied the provisions of Suburban's offer, and a list of the tangible and intangible personal property intended to be sold. Paragraph 5 included in the sale: "An assignment of the lease of premises known as No. 800 Debelius Avenue, and now occupied by Gosman Beverage Company together with the balance, if any, of a deposit in escrow given to the landlord to secure the payment of rent; the purchaser to assume all future liability under said lease, and all liability, if any, for overdue rent and taxes under said lease, and to secure the release of Gosman Beverage Company from liability thereon; with the written consent of such assignment by the landlord." The last paragraph of the offer and of the bill of sale read as follows: "The Seller warrants that all the property sold hereunder is free and clear of all liens and encumbrances, save and except refund deposits on account of bottles and cases in the hands of customers. It is understood and agreed that this warranty shall survive the delivery of possession of said assets."

Gosman, as assignee, was tenant of the Debelius Avenue property under a lease which provided for a deposit to be retained by the landlord as security for the performance by the tenant of the covenants of the lease, which included, inter alia, the payment of rent and the payment of all charges for water used in the demised premises. The deposit was subject to reduction annually, and the landlord had the right to apply so much of the deposit as might be necessary toward any damages sustained by the landlord upon breach by the tenant of the terms of the lease.

At the time its offer to purchase was made and accepted, Suburban believed that the balance in the deposit was $1,768.36, although no representation to that effect had been made by the receiver or the landlord. After the sale had been consummated, Suburban discovered that Gosman had failed to pay bills for water service to the demised premises for a period of more than six months before July 5, 1956.* Because of haste in making the offer and consummating the sale, neither party had obtained a lien certificate from the City. Such a certificate, no doubt, would have referred to the water rent and some provision might have been made for it in the offer.

The petition in bankruptcy was filed herein on July 10, 1956, and Gosman was duly adjudicated bankrupt. On or about November 8, 1956, to avoid an interruption of the water service, Suburban paid $726.32 to the City for unpaid water charges to August 17, 1956. Suburban then filed a petition for a refund out of the bankrupt estate of the entire amount of $726.32. This petition was denied by the referee. Suburban's petition for review raises four questions: (1) Was the water rent a lien on the property? (2) Was the water rent a lien on the leasehold interest sold to petitioner? (3) Was such a lien on the leasehold interest included in the warranty against liens in the last paragraph of the offer and of the bill of sale? (4) Does the bankrupt estate have to assume the burden of such a warranty?

 (1) Water rent is a charge within the meaning of sec. 6(18) of the Baltimore City Charter of 1946 and is a charge in the nature of taxes within the meaning of sec. 52. A charge for water rent is a lien on the property unless and

---

* 11-21-55 to 2-21-56 $270.40
2-21-56 to 5-22-56 . 289.10
5-22-56 to date of sale undetermined

until a lien certificate is issued which omits the particular charge; sec. 46(b). If a charge for water rent is omitted from a certificate, the lien is lost; but unless and until the lien is so lost, it remains a lien on the property. The answer to petitioner's first question is "yes".

(2) Such a charge is a lien on the entire fee simple interest in the property, both leasehold and reversion, and may be enforced against either the leasehold or the reversion or both. See Eschbach v. Pitts, 6 Md. 71.

(3) The principal question is whether the overdue water rent should be considered "overdue rent and taxes" for which the purchaser assumed liability under paragraph 5 of the offer and of the bill of sale, or should be included among the "liens and encumbrances" covered by the warranty in the last paragraph. If we were dealing with taxes rather than with water rent, it would be clear that the liability was to be assumed by the purchaser, and that such taxes were not "liens and encumbrances" from which the seller warranted the property to be free. Charges for water rent are not taxes, Wolff v. Quick, 3 Balto. City Rep. 152, but they are charges and liens in the nature of taxes. City Charter, secs. 6(18), 46(b) and 52; Lee v. Keech, 151 Md. 34, 37, 133 A. 835, 46 A.L.R. 1488. I conclude that under the terms of the offer and bill of sale, water rent should be treated in the same way as taxes, and that those documents should be so construed as to require the purchaser to assume liability for overdue water rent.

This conclusion is supported by the fact that the property sold to Suburban included "the balance, if any, of a deposit in escrow given to the landlord to secure the payment of rent." Since the deposit also secured the payment of all charges for water used in the demised premises, the money to pay the charges for water should be taken out of the balance of the deposit rather than out of the proceeds of sale turned over by the receiver to the trustee in bankruptcy.

(4) These considerations require the court to affirm the decision of the referee denying Suburban's claim against the bankrupt estate.

It is so ordered.